Counsel, whenever you're ready, you may proceed. Good morning, Your Honors. Thank you very much. My name is Edward Moore. I represent the appellant, defendant in the interlain case, Robert Sutphen. This is an appeal from jury brief, and in that jury trial, there were two counts at issue. And just briefly for background, Count 1 alleged that my client, who is the 51% shareholder and vice president of a company called Advanced Ironworks, submitted fraudulent pay applications, 19 in total, to Contegra, a general contractor, under the subcontract he had to fabricate iron. And that he had exaggerated or lied about the amount of steel that he had fabricated, and harmed Contegra to the extent of $921,000. They sought that sum plus punitive damages. The jury found for Mr. Sutphen found that there was no submission of fraudulent pay applications. There was no fraud in the submission of the claims for money in the case. Count 2 was sort of a, often it claimed that he had altered what are called stored material logs, and submitted them to Contegra to quote, obtain payment, which is duplicative of Count 1, and then also to quote, retain title. A stored material log is a form that the state of Illinois, who is the owner, this was a public building, the Metro East Crime Forensic Lab, I believe in, I think it was in Belleville. As the owner, the Capital Development Board requires the contractor, which in this case was Contegra, to sign a document called a stored material log any time it requests payment for material that's not on the job site. And at the very beginning of the job, since this is a steel-framed building that went up, the board, the orders for steel were put in at the mill, and the contract between AIW and Contegra said that Contegra was going to advance pay for those orders. So the purchase orders went into the mill, both Contegra and AIW were listed on the purchase orders to the mill, which that came into the evidence at trial, but then Contegra turned around because they had paid the money for the steel, asked the CBD for reimbursement, the CBD gave a form called the stored material log, which says that, although the material log was not on the job site, title transfers to the state of Illinois. And the first one was signed for about $320,000 by AIW, by Mr. Sussman on behalf of AIW, submitted to Contegra, and then the second and third ones, this was early in the job, these three material logs were all signed and done by March 2012, the job started in, basically in January. So very early on, I don't know if it's in the order of steel, these things were signed. Stored material logs number 2 and 3, somebody at AIW had scratched out this transfer title language. That was count 2, count 2 alleged that that was fraud, to obtain money, and to, quote, obtain title. Now, there's a couple of things before we get into the, this was a fascinating case to me, and I hope to you. There's a couple of things, I hope to you, there's a couple of things I want to get into before getting to the legal issues. There's only a couple of legal issues, first, raised judicata, second, JNOB, those are the The first thing to note is that this dispute that happened between Contegra and Advanced, which came to a head after AIW stopped getting paid by Contegra in August of 2012, the job's going up, steel's being fabricated, Contegra wasn't going to get paid for all this delay and change that occurred because there were errors in their architectural drawings, it And by October, AIW said, hey, my contract says I don't have to ship if you don't pay me, and it stopped shipping, Contegra demanded that the steel be shipped, Contegra ran to Chicago and they filed a replevant action in Cook County Circuit Court, AIW goes into bankruptcy because they're not being paid, cash flow problems, in bankruptcy, the exact claims, and I mean exact, and I cite in the brief the pages of the records where these complaints appear, the exact, identical, identical even to the title of the caption, were pled in bankruptcy court. December 18th, 2012. So wasn't that bankruptcy dismissed? Yes, Your Honor, it was dismissed, but not before an order was entered, April 19th, 2013, dismissing these identical counts, they were counts 3 and 4 of the adversarial action with prejudice. And a dismissal with prejudice, as this court knows, is tantamount to an adjudication on the merits, a plaintiff who takes such a dismissal is therefore forever barred from refiling his cause. Douglas V. Walter, 5th District, 1986. Contegra dismissed the claims against AIW in the adversarial complaint in bankruptcy with prejudice in April 2013. Before they did that dismissal, they had come down here to Madison County and filed an action against Mr. Sutphin individually, you know, with the same identical counts. Now, this raises several issues. First, the first is, was there a final judgment? As I just cited, Douglas V. Walter, a voluntary non-suit with prejudice is a final judgment, it is an adjudication on the merits. Was there an identity of parties? Yes, there was an identity of parties. Mr. Sutphin, at page C-231 of the record, was shown, and it was never disputed, he's a 51% shareholder of AIW and a vice president. And under Apollo Real Estate and Cabrera, privities such as, parties over privities is what's required when you're assessing whether there's an identity of parties, and the law is very clear that a majority shareholder of a closely held corporation is in privy with the corporation. So, there's a final judgment, there's the causes of action are identical, and the fact that the case, that later on, the bankruptcy was dismissed, does not void the dismissal with prejudice that Contegra took in the case. The trial court mistakenly thought that once the bankruptcy fizzles out, there's no final resolution, that all the orders go away. That's not what this court held in Bush U, the First National Bank of Effingham. It held the opposite, that the orders are not vacated by the subsequent dismissal of the bankruptcy. On appeal, for the first time, Contegra argues that Stern applies, and that, golly gee, the bankruptcy court never really had jurisdiction, yeah, we filed a suit there, we ran the bankruptcy court to file our adversarial action, they invoked the jurisdiction of the bankruptcy court. But now they want to say, but it's not one of their own, the three court didn't have really the power to make a final binding order, except they miscite, and they misstate a subsequent clarification of Stern v. Marshall by the United States Supreme Court in Wilmer's International Network, where the court held that you may consent to a bankruptcy court deciding adversarial actions. The very complaint, in other words, you may consent to have a non-court proceeding decided by a bankruptcy court. The very pleading that Contegra filed in the bankruptcy court alleged that it was a poor proceeding. And it's not clear that it's not, because under the bankruptcy statute, this case never involved a personal injury tort or a wrongful death. So it's not clear, I don't know, I don't do bankruptcy law. But even if it is non-court, they alleged it was court. They went to bankruptcy court, invoked the court's jurisdiction, alleged it was court, in the context of procedural rules that clearly state what the consequence is of consenting or even alleging that an action is court. You can be bound. Now they want to claim, no, no, no, we're just kidding, yeah, we did not sue you with prejudice, but no, no, we don't want to help against this. That's not proper. There were other threads in the raised judicata argument. The trial court, who really did an admirable job with the trial, in my opinion, said in explaining her raised judicata ruling, which had not been explained in the written order, when we were doing the pre-trial motions, explained that, well, there was a timing issue, and this was actually argued also by Contegra, there was a timing issue in that the Madison County complaint was filed before the first admitted adversarial complaint in bankruptcy, the one that was non-suited. Totally irrelevant. It's not which is filed first, it's which is dismissed first. When you dismiss a case, creating delusive technologies, Fifth District 2000, when you can have multiple actions pending, if allowed, or if it occurs, multiple actions can be pending. The question is, when one gets dismissed, it can have raised judicata effects as to the other case, if the other elements of raised judicata are met. So which is filed first isn't relevant, it's which is dismissed first, and in this case, the adversary was dismissed first. The second argument I want to make is J and O V. First of all, I want to say, and make it very clear, that in the trial court, Mr. Sutton was sanctioned for a discovery violation, which I do challenge somewhat in the briefs, and it was determined that the sanction would be, well, the initial sanction was written very broad, but the way that it worked out was, he's going to be barred for contestant alteration, which I was fined, and I agreed with, and I submitted a jury instruction to the court, which accepted that sanction, and that the jury instructed that the alteration is material. Now, in the trial court, I do dispute whether that was a proper sanction, the last part, that it was material. But we do not dispute at all that the fact was established through the sanction that Mr. Sutton altered the store material law. The point that we make on appeal is, and? What happened? So what? What happened was, in the trial court, and this could be because count one was such a big part of the trial, I don't know, the plaintiff, Contegra, didn't make a case. It's up to the plaintiff to prove that something resulted, some damage resulted from the altered store material law. It didn't prove it. How? How? How? How did Sutton, much less his company, or either of them, use the store material law to any end? It was never explained. There's no evidence. How did the altered language on two or three store material laws prevent Contegra from getting lost? Because remember, the way that it trickled out is store material laws applied to the raw steel. And that's how the trial was tried. That's why the jury awarded $15,000 because there were some testimonies that that was the value of the raw steel. There's no evidence. What the evidence was from Mr. Barnhart, page 741 of the Record, it was the replenment court orders that prevented Kintegra from collecting the raw steel. And not only is that what he testified, that's actually true. That's actually what happened. And the court, I, of course, had moved the Barberry Club in action because I thought it was a colored count one. I didn't want to make, I disputed any right of Kintegra to anything, so I moved the Barberry Club in action. The court denied it in part. But when this issue came up, the court gave an instruction to the jury, a replevant action is a separate kind of case and did not constitute a judicial outcome in this case. That's the full extent of the explanation of a replevant action in our case. True? It was complicated by the fact that I had moved the Bar, whatever, it doesn't matter. It's the plaintiff's case. How did the alteration of a store of material law cause any damage whatsoever? There's no evidence. There's some very, very weak testimony from Barnhart and who's the, he's an officer, I think, on the subject, but it's, Barnhart basically says he didn't get it because of the court order. He, nobody mentioned the store of material law. In answer to one question, this is all that they had out of the whole trial, Andrew Ridgway said, was asked, what effect did the deletion of the transfer of title provision on store of material law ultimately have on Kintegra? That was the question. So I concede that issue was raised in the question. Answer, we couldn't get the steel in Chicago that we paid for. This is page seven, this is page 1740 of the record. We couldn't get the steel in Chicago that we paid for. We had to go to court and get the steel through that means which took a lot of time, a lot of money, added more time, you know, to everything and costing us a lot more money and just personal time. After that, did you get the steel you paid for? No. Just fully fabricated? Answer, just fully fabricated. Well, there was a court proceeding in Chicago that, you know, these, and by the way, these counts are still going on. There's still a rich contract count pending in Cook County. There's still a wrongful and plebeian action pending in Cook County. When they sent over this stuff and ran down the air and sued Mr. Suffin individually, all that other litigation stayed in Chicago and it's still in suit. There's no reasonable basis to believe that, and there's no explanation of how a court order in some other proceeding did or didn't relate to the store material of the alleged fraud in this case. I said, we're not disputing the sanction. So it was altered. But to what effect? They still have to show cause. Now that brings me to the last argument, which is a new trial. The sanction, when it came to materiality, I think was too much. Why? Not because of their order that was entered by the court initially. I can see that scrutiny of almost everything. I was standing naked in the elements, but the way that the trial went, because I told the court judge, I don't want to harm myself, but I want to contest causation, I want to contest damages. She said, you may contest damages, you may contest causation, and I wound up contesting damages and causation. Well, then why do we instruct the jury that the alteration is material? It clearly wasn't material. What is materiality? Materiality is related to causation. So that's an error. That's an error that's an issue on this appeal. It's relevant to the paraphernalia trial, and had I been able to contest materiality, I think the trial would have worked out differently. In order of preference, though, to sum up, I think this case is a reasonable trial, and I think it's equitable, even though it's not an equitable doctrine, to apply it in this case. And this branch of this litigation that's cluttering up multiple courts, off. Second, J. Lloyd, they didn't prove their case, and they should bear the consequences. Thank you very much. Thank you, counsel. Counsel? Can I have a minute, please, before I speak? Christopher Baucom, counsel for the Plaintiff-Contegra Construction Company. If Your Honor's not minding, a quick cup of water. Sure. Your Honor, to begin on what is probably the overarching issue for the court, it's the plaintiff sees as the overarching issue on this appeal, is to address the res judicata argument. I think it's important to note something that's been glossed over repeatedly by the defendant here, and it's bankruptcy courts have extremely limited jurisdiction. Every case that is played out in the Supreme Court for a bankruptcy court, it emphasizes that fact. And Mr. Sutphin was not subject to the jurisdiction of the bankruptcy court. The bankruptcy case was brought by Advanced Iron Works, his company. He was not a party to that proceeding at any point. When we talk about the adversarial claim that Contegra was forced to bring in the bankruptcy court, that claim was against AIW, the party that the court had jurisdiction over. It was not against Mr. Sutphin. And then we address what becomes a complicated issue, one that was decided after Cabrera and Buschew, two cases relied on the plaintiff, and that's the core versus non-core distinction in the bankruptcy court, and that's detailed in the Stern and Wellness cases. And the proceeding that Contegra brought in the bankruptcy court, again against AIW and not against the defendant, Mr. Sutphin, contained both core and non-core claims. And you'll see distinctions in the case law regarding claims. The core claims were a declaratory judgment action and a request for injunctive relief that were directly related to the bankruptcy proceeding and affected the pendency of the bankruptcy pleading. The non-core claims brought in that proceeding against AIW were two-fraud allegations, and those are the epitome of what Stern and Wellness have discussed as non-core claims, and those are the ones that the bankruptcy court does not have the authority to issue final orders on. Counsel? Yes, sir. If I understood Mr. Sutphin's attorney's argument on the privity issue, and that was, well, his client is the majority shareholder, I think that's what he was arguing, and therefore it's the same thing as the corporation. Is that... I think that... I agree he was arguing that his client is the majority shareholder of Advanced Ironworks, and I believe we're talking about an important distinction when we're dealing with a bankruptcy against a corporation versus, say, a traditional breach of contract action that would have been pending in state court in Madison County. For instance, had we proceeded in Madison County against AIW and there was no bankruptcy, Your Honor, that's a completely unique situation because in that claim against AIW, the court has broader jurisdiction over parties and claims than the bankruptcy court does. For instance, in that claim, if there were one in Madison County at the time against AIW, we couldn't have filed a claim against Mr. Sutphin individually in that action. In the bankruptcy court, Your Honor, Contegra could not file an individual claim against Mr. Sutphin. So the privity issue is not as clear-cut as it would be in a relatively normal breach of contract fraud action against two related parties because the bankruptcy court's jurisdiction limits the claims that can be brought in that instance. And, Your Honor, that takes me to Cabrera and Buschew, and the policies behind those decisions. Again, pre-stern, pre-Wellness. However, in those instances, these are cases relied on by the defendant. The bankruptcy proceeding involved the party seeking the protections of bankruptcy, and then later, once it had been afforded those protections, attacking another party. That is essentially what the defendant here is trying to do. He sought, or his company sought, the protections of the bankruptcy court. Once the utility of that court was used up, much like in Cabrera and Buschew, they had no need for the bankruptcy court anymore, he now is taking the protections previously afforded him to attack the claims that had been brought against him by Contegra. That's a very similar situation to what Cabrera and Buschew found improper. However, he's trying to turn it on to Contegra in this case, Your Honor, where Contegra did not seek the protections of bankruptcy. Contegra did not search out those protections that would be afforded to it. Instead, Contegra had to bring an adversarial proceeding against, again, AIW, and could not bring an adversarial proceeding against Mr. Sutphin. Actually, prior to the dismissal of the fraud claims against AIW, Contegra had begun the litigation against Mr. Sutphin as it properly could. Back to the core, non-core distinction. Again, Your Honor, with respect to the fraud claims, Contegra had never voluntarily, explicitly, or even impliedly, and there's nothing in the record to show otherwise, consented to the adjudication of the fraud claims by the bankruptcy court. They were brought along with the declaratory judgment claim and the injunction claim because they had to be. Briefly addressed, they weren't mentioned in argument, however, Your Honor, they were mentioned in the appellant's briefing. There were three arguments, and we've discussed them in our briefing, so I'll be very short here, that were raised for the first time on this appeal. As the court knows, it's wholly improper. The trial court did not have an opportunity to address these arguments, and it's the defendant's argument that count two on the whole was a post hoc rationalization, that the plaintiff had no right to rely on defendant's misstatements, and that the trial court invited improper comment. The post hoc rationalization argument is, he claims, an expansion on his argument that there was no evidence of damage. However, this line of reasoning is wholly new. It was never presented to the trial court, and while I can't speculate as to what the trial court would have done had she been presented with the opportunity to address this line of reasoning, the opportunity was never presented. The right to rely argument, it was previously raised. However, not in the context that plaintiff raises on appeal. The right to rely argument was based on the visibility of and the deletion of the transfer of title language. Counsel mentioned that the transfer of title language was scratched out. To me, that implies you've got this sheet of paper. Someone takes a pen and just scribbles through it. Glaring notation on that piece of paper. However, that's not what happened, and the record's clear that that provision disappeared from the state-mandated form. It was not clearly scratched out or blacked through. It was gone. The argument he makes on right to rely before this court, again, is different than what he made in front of the trial court, where the right to rely was an attempt to avoid sanctions and argue that the sanctions imposed on the defendant were improper. And then in the reply brief before this court, the defendant argues that he implicitly raised his final argument that the court invited improper comment. That was never argued previously, and I believe the defendant says as much in his reply brief. With respect to requests for a judgment notwithstanding the verdict, the court's decision at the trial level was wholly appropriate. There was ample evidence, and in fact, counsel read some of the evidence that allowed the court to agree with the jury that Contagra had proven its case, had proven that it could not get the steel, the raw steel it was entitled to, because the transfer of title provision had been deleted. And what counsel said today is, in quoting the testimony, is actually saying he went to the direct question. Why couldn't we get the steel? Because the transfer of title provision wasn't there. There have been arguments in the briefing about circumstantial evidence and what would be enough to prove it. However, before this court, the counsel for Mr. Sutphin has read the direct question, not circumstantial evidence, not speculation. The direct question, the direct answer, which stated Contagra's case. Additionally, and this was addressed by defendant's counsel, the defendant sought to bar any discussion of the replethen action. While the judge did not grant that motion in full, there was exceptionally limited evidence that could be presented regarding the fact of replethen and no evidence that could be presented on what actually went on in the replethen action. Now the defendant's position is, because you didn't talk about the replethen action, because you didn't tell the jury everything that went on in the replethen action, we're entitled to a judgment notwithstanding the verdict. It was the defendant's position that prevented Plano from being able to make the arguments regarding the replethen action and present the jury a full picture of what the replethen action was and what the results were. To now come back and say that based on defendant's position at trial, there was an error so egregious that we should start anew is certainly not grounds for a judgment notwithstanding a verdict. The denial of the defendant's request for a new trial was wholly appropriate. The judge, we sat there a number of days, I think it may have been seven. It's in the rear view mirror now, so I can't remember exactly. The judge allowed in all the evidence. The judge heard all the evidence. The jury heard all the evidence. And in the end, the jury agreed that what they heard from Contegra's witnesses was enough to support their verdict. The judge, having heard the same evidence, agreed the same. There's simply nothing in the record to show that a new trial would be appropriate. It was briefly discussed, and I believe that the defendant has now backed away from saying the entry of any sanctions were inappropriate. But it's turned to the manner in which those sanctions were awarded as being the question of what was appropriate, or the manner in which those sanctions were put into effect is now the question of whether or not that was appropriate. The court in sanctioning the defendant on the eve of trial for failing to produce documents that had been requested for years was that they could not put forth any defense regarding alteration of these stored material logs, and that the court had no judgment on the applicable counts or applicable elements of that fraud claim as the court saw appropriate. As this court's well aware, the trial court has broad discretion in entering sanctions and enforcing those sanctions as it deems appropriate. Contegra asked for a very, very strong sanction. Contegra asked for a default on count two against the defendant. Contegra wanted the jury to have nothing to worry about but damages. The court did not give Contegra that relief. The court took a very measured approach. I would argue, especially at the time, that it was too measured, that it gave the defendant too much leeway. However, the court, in its discretion, took a measured approach and entered judgment on the first two elements of count two, which was a fraud claim. The issue has been whether materiality comes into play. Well, the defendant's now asking this court to essentially rewrite the Illinois pattern instruction because material is within the first element of proof of a fraud claim. So the court would have had to have taken that out of the instruction and placed it somewhere else to comply with what the defendant's now saying would have been the proper enforcement of the sanctions word, and there's simply no basis for doing so. Causation, reliance, and damages were all contested vigorously, very vigorously at trial, and the jury disagreed with the defendant. The jury found that Contegra had proven causation, reliance, and damages and entered a verdict in Contegra's favor. Your Honor, we ask that the request for a new trial, the request for a judgment notwithstanding the verdict, and the request that this court order the case dismissed as barred by judicata all be denied and that the verdict be allowed to stand in Contegra's favor. Unless Your Honor has any questions, that is all. I don't believe we do. Thank you. Thank you, Judge. Counsel? Thank you, Your Honor. Very briefly, first of all, the Angela Ridgway snippet I read doesn't explain anything. It doesn't explain how the altered stored material log was used. In the briefs, I set it out very clearly where all this error really stems from. Before the trial, in pretrial proceedings, counsel for the defendant told the court that the defendant had used the absence of title language in the defense counsel told the court that's not true. Counsel apologized and then claimed that the altered stored material log language had been used as a defense in the bankruptcy action, page 1159 of the record. That was also incorrect. And the trial court was informed. Then another attorney for the defendant reasserted that we had used, that rather my client had used the altered language to frustrate the ability of the bankruptcy court in the 11th court to transfer title. That was a false statement. There's no evidence in the record anywhere, not in the documents, not in the testimony, that that occurred. But the statement had been made. And after I moved, when I was moved to a directed verdict, the trial court denied it saying, no, Brad and Angela testified that the altered language was used to prevent taking this deal. I respect the trial judge, believe me. But that statement, as you can see, and as I again learned from scrutinizing the record very closely, the statement was never made. There simply was no evidence presented as to how Mr. Sutphin, much less AIW, used this missing language to do anything. What emerged was this, that the sum, after the whole relationship fell apart and there's all this litigation going on in Chicago, somebody from the Attorney General's office pointed out to Contegra that the language was missing from the stored material. That's in the record. That was testified to by Brad Barnard, I believe. The AG didn't do anything. This is language that enters to the benefit of the state of Illinois, by the way, not Contegra, the stored material law. The state of Illinois didn't do anything. But it had been pointed out, and it was from that point on, this is in October, November 2012, from that point on, this count appeared in the adversary action that the language had been altered, fraudulently, to retain title. Well, okay, so that's a post-op rationalization. That's clearly an issue raised in the briefs. Clearly related to causation, that's what this count was. It was a post-op rationalization that bore no connection to reality, which is why, if you don't dismiss it on race judicata grounds, which I think would be proper, the case, the trial court should be reversed in judgment, not withstanding the verdict should be appealed. Thank you very much. Thank you, counsel. We appreciate the briefs and arguments, counsel. We'll take the case under advice. Thank you.